UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROSALIND SEARCY,<br><br>  Plaintiff,<br><br>  v.<br><br>ESURANCE INSURANCE COMPANY,<br><br>  Defendant. | Case No. 2:15-cv-00047-APG-NJK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S SUMMARY JUDGMENT MOTION**<br><br>(ECF No. 74) |

Plaintiff Rosalind Searcy brought this lawsuit for extra-contractual damages against her insurer, defendant Esurance Insurance Company, alleging Esurance refused to pay her policy limits in bad faith and engaged in unfair claims practices. Esurance moves for summary judgment, arguing Searcy's claims for breach of contract and unfair claims practices are barred by claim preclusion because Searcy should have brought those claims in her prior breach of contract action against Esurance. Alternatively, Esurance seeks summary judgment against any award of punitive damages because it contends Esurance relied in good faith on its counsel's advice. Esurance also argues Searcy cannot recover attorney's fees and costs incurred in the underlying breach of contract action because she agreed to dismiss that action with each party to bear its own fees and costs. Finally, Esurance argues Searcy cannot recover damages for actions taken by Esurance's counsel in the underlying action because those actions are privileged.

Searcy responds that she properly waited until she established her entitlement to contractual benefits in the first litigation before bringing extra-contractual claims in this second lawsuit. As to the punitive damages, Searcy argues that Esurance cannot rely on the advice of counsel because Esurance had already decided to deny her the full policy limits and it ignored its attorney's advice to reevaluate her claim upon receipt of new evidence. As to the attorney's fees and costs, Searcy they are recoverable for her bad faith claim, which was not part of the prior action. Finally, Searcy contends the litigation privilege does not apply to Esurance for its bad

faith conduct in forcing its insured to litigate past the time when her right to benefits became clear.

**I. BACKGROUND**

On August 2, 2012, Searcy was injured in a car accident caused by another driver rear-ending her vehicle. ECF No. 75-10 at 2-3. The insurance company for the person who caused the accident paid Searcy the policy limit of $15,000. ECF No. 75-4 at 5.

Searcy was insured by Esurance for underinsured motorist coverage up to $50,000 per person and $100,000 per accident. ECF No. 75-1 at 2. Searcy made several demands on Esurance for the $50,000 policy limit. ECF Nos. 75-5; 75-6; 75-7. Esurance agreed to pay some amounts as the case progressed, but never agreed to pay the full policy limit. ECF Nos. 75-7; 75-8.

On September 16, 2013, Searcy filed suit in Nevada state court against Esurance. ECF Nos. 75-9; 76-1. In that complaint (*Searcy I*), Searcy asserted a single claim that Esurance breached the insurance contract. ECF No. 76-1. She did not assert extra-contractual claims. *Id.*

The case went to arbitration and Searcy prevailed. ECF No. 76-2. The arbitrator issued his award on September 5, 2014, directing Esurance to pay the $50,000 policy limit. *Id.* Following the parties' request for clarification, the arbitrator issued a second order on September 17 stating that Searcy was entitled to the entire policy limit without offset for prior recoveries. ECF No. 76-3. The next day, Esurance sent a check for the remaining balance on the $50,000 policy limit to its attorney to forward to Searcy. ECF Nos. 75-11; 75-12 at 8. However, Searcy did not receive the check until October 23, 2014. ECF No. 75-12 at 9; 75-13. According to Esurance's attorney, the delay was caused by the check being mailed to the wrong address.[1] ECF

---

[1] Esurance presents evidence that the delay in getting the check to Searcy was inadvertent but it does not specifically move for summary judgment on the issue of whether the check was delayed in bad faith. Although Buckwalter testified the check was sent to his former address, the check bears the new address. *See* ECF Nos. 75-11 (check bearing Russell Road address); 75-12 at 9 (Buckwalter testifying that check was sent to old address; arbitrator's decision was sent to old address); 75-13 (receipt showing Russell Road address); 76-2 and 76-3 at 3 (arbitrator's decisions sent to address on Buffalo Drive). Neither party provided the envelope in which the check was sent from Esurance to Buckwalter. Given that the check bears the new address, an issue of fact would remain about whether the delay can be explained by the check being inadvertently sent to the wrong address.

1  No. 75-12 at 9. On February 3, 2015, the parties stipulated to dismiss *Searcy I* with prejudice,
2  with each party to bear its own costs and attorney's fees. ECF No. 76-4.
3     Searcy filed this action (*Searcy II*) in Nevada state court on December 4, 2014. ECF No.
4  1-2.  Esurance then removed the case to this court. ECF No. 1.  In her amended complaint, Searcy
5  asserts against Esurance claims for bad faith and unfair claims practices. ECF No. 43.

## II. ANALYSIS

### A. Claim Preclusion

I "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (quotation omitted).  I therefore look to Nevada's rules of preclusion to determine whether *Searcy I* bars the claims in this case. *Id.*  Under Nevada law, claim preclusion applies where: (1) "the final judgment is valid," (2) "the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a good reason for not having done so," and (3) "the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Weddell v. Sharp*, 350 P.3d 80, 85 (Nev. 2015) (en banc) (quotation and emphasis omitted).

Here, there is no dispute that the final judgment in *Searcy I* is valid.  The parties stipulated to dismiss *Searcy I* with prejudice following the arbitrator's award.  There also is no question the parties are the same in the two actions.  Searcy sued Esurance in both cases.

The parties dispute whether Searcy's new claims are based on the same claims that were or could have been brought in the first case. "Generally, the date of final judgment in the first case marks the latest date at which the claim preclusion bar could apply." *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1209 (D. Nev. 2009); *see also Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("While the 1943 judgment precludes recovery on claims arising prior to its

entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.").

"Under Nevada law, however, it is not necessarily the case that all claims arising before the date of final judgment in the first case are barred." *Carstarphen*, 594 F. Supp. 2d at 1209. This district has predicted that the Supreme Court of Nevada would adopt the majority rule that "claim preclusion extends to claims in existence at the time of the filing of the original complaint in the first lawsuit and any additional claims actually asserted by supplemental pleading." *Carstarphen*, 594 F. Supp. 2d at 1210; *see also Round Hill Gen. Improvement Dist. v. B–Neva, Inc.*, 606 P.2d 176, 178 (Nev. 1980) (holding that a delinquent assessment claim in the second action was not identical, and thus not precluded, when the evidence supporting the second claim related to a different time period than evidence supporting the first claim).  There are exceptions to the majority rule: (1) where the "second claim depends on the allegation that a series of wrongful acts constituted a single scheme, rather than merely later actions of the same type;" (2) the first action "incorporated a settlement intended to govern future, related transactions between the parties;" (3) the first action "resolved claims for declaratory or injunctive relief dealing with conduct persisting through trial or into the future;" or (4) the first action established "the legality of the continuing conduct into the future." *Carstarphen*, 594 F. Supp. 2d at 1210-11 (quotations omitted).

Searcy's bad faith and unfair practices claims are claim precluded to the extent they rely on Esurance's conduct before the complaint in *Searcy I* was filed because she could have brought those claims in her complaint in *Searcy I*. *See* ECF No. 76-1 at 4-15 (alleging that Esurance had medical records of injuries resulting in over $24,000 in medical bills and had no evidence those injuries pre-dated the accident but Esurance nevertheless refused to settle for policy limits); *id.* at 16 (alleging Esurance was concerned with minimizing its own costs, not investigating, and causing Searcy hardship and stating Esurance did not discharge its fiduciary-like duty to Searcy).

Additionally, those aspects of Searcy's bad faith claims that are based on the same acts and information that Esurance had when it denied her claim pre-*Searcy I* are barred because she

has not alleged any post-filing acts that would support a new bad faith claim. For example, Searcy alleges that prior to the complaint being filed in *Searcy I*, Esurance had doctor's reports and related medical bills showing the extent of her injuries. ECF No. 43 at 3-4. She further alleges that no new information came to light during discovery to suggest that her injuries were not caused by the accident or were not as extensive as she initially claimed. *Id.* at 7-10. Her extra-contractual claims based on Esurance's continued refusal to pay therefore are barred because there is no post-filing act to support a separate bad faith claim. Rather, these allegations are a continuation of the same pre-filing bad faith claim that Searcy could and should have brought in *Searcy I*.

However, not all of Searcy's claims fall into this category. Searcy makes three allegations of post-filing events: (1) she hired an economist to do an economic loss valuation in *Searcy I* and Esurance still denied payment after receiving the expert's report; (2) Esurance unreasonably delayed payment for five weeks following the arbitrator's award;[2] and (3) Esurance's attorney in *Searcy I* engaged in various aggressive litigation tactics, such as asking her embarrassing and irrelevant questions during her deposition. *Id.* at 5-7, 18-19. Searcy could not have brought a bad faith claim based on these allegations when she filed *Searcy I* because the facts supporting the claim were not yet in existence. Searcy did not amend, supplement, or move to amend or supplement her complaint in *Searcy I* to include extra-contractual claims for these post-filing events. Consequently, her claims are not barred to the extent they are based on Esurance's conduct following the filing of the complaint in *Searcy I*, unless her claims fall within one of the exceptions identified in *Carstarphen*. Esurance did not present evidence or argument that Searcy's claims fall within an exception. As the party invoking claim preclusion, Esurance has

---

[2] Given this allegation, Esurance's reliance on the cases cited in *Carstarphen* is puzzling. In those cases, just as here, the bad faith claim was based on the insurer's post-filing refusal to pay a judgment or award and the courts concluded the bad faith claims were not precluded. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529-30 (6th Cir. 2006) (holding bad faith action not barred by prior contract action where insurer failed to pay the judgment from the first lawsuit until the plaintiff agreed to sign a release); *Pulley v. Preferred Risk Mut. Ins. Co.*, 897 P.2d 1101, 1102-03 (Nev. 1995) (holding bad faith action not barred by prior contract action where it was based on insurer's failure to pay the arbitrator's award from the first action for fifty days).

the burden of proving Searcy's claims are barred. *Round Hill Gen. Improvement Dist.*, 606 P.2d at 178. It has not done so for Esurance's conduct after the complaint in *Searcy I* was filed.

Esurance relies on *Sosebee v. State Farm Mutual Automobile Insurance Company*, 164 F.3d 1215 (9th Cir. 1999), to argue Searcy's claims are barred because she knew all the facts supporting her claims before the final judgment in *Searcy I*. In *Sosebee*, an insured sued her insurer for breach of contract, bad faith, and violations of the insurance code after her insurer refused to pay medical bills following a dispute about the extent of her injuries from a car accident. *Id.* at 1216. The insurer prevailed on the bad faith claim at summary judgment. *Id.* The insured moved for reconsideration, which the district court denied. *Id.* The insured later moved to amend to add a new claim for continuing bad faith during the course of the litigation, but the district court denied that motion as well. *Id.* at 1217.

The breach of contract claim went to trial and the insured prevailed. *Id.* Post-judgment, the insured again moved for reconsideration of her bad faith claim but the district court denied her motion. *Id.* The insured did not appeal. *Id.*

Instead, she filed a new action against her insurer for bad faith. *Id.* The district court ruled the second action was barred by claim preclusion. *Id.* The Ninth Circuit, applying Nevada claim preclusion law, affirmed the ruling that the insured's claims were claim precluded because "before the time to appeal the first judgment had expired, [the insured] knew, or competent discovery should have revealed, all the facts which she relied upon to file her second action." *Id.* at 1218.

*Sosebee* is not contrary to the majority rule as articulated by *Carstarphen*. Because the plaintiff in *Sosebee* pleaded a bad faith claim and attempted to add a bad faith claim based on her insurer's post-filing conduct, she was precluded from attempting to re-litigate those claims in a second action. Instead, she should have appealed the district court's rulings (1) granting summary judgment on the original bad faith claim and (2) denying the addition of a bad faith claim based on newly discovered facts. *See id.* ("By accepting the verdict and judgment and failing to appeal, Sosebee now has to confront the problem of res judicata as it relates to claims

actually litigated and claims that could have been litigated in the first case."); *Carstarphen*, 594 F. Supp. 2d at 1210 (stating *Sosebee* held that claim preclusion applied "because the plaintiff had alleged bad faith in her first action, had moved to delay trial and reopen discovery on that claim, and failed to appeal denial of that motion"). *Sosebee* did not address the rules of preclusion where the plaintiff chooses not to attempt to supplement her complaint based on post-filing events. This may seem counterintuitive because the plaintiff in *Sosebee* was more diligent in trying to avoid piecemeal litigation than Searcy. However, by attempting to bring a post-filing claim into the pending litigation by supplementing her pleadings, the plaintiff in *Sosebee* was then required to litigate those claims to their conclusion in the first action or risk preclusion. Her failure to follow through and appeal the district court's denial was fatal to her second lawsuit. *Carstarphen*, 594 F. Supp. 2d at 1210.

Esurance also relies on the following quote from *Sosebee*: "we find no authority to suggest that the Nevada courts would allow a separate bad faith action based on the insurer's refusal to consider new evidence that was uncovered during discovery in *Sosebee I*." *Sosebee*, 164 F.3d at 1217. However, that statement must be considered in the context of the facts in *Sosebee* where the plaintiff tried to bring a bad faith claim initially, moved to supplement that claim based on post-filing facts, and then did not appeal the adverse rulings related to those claims. Also, the feature of Nevada law that allows a separate bad faith action based on a post-filing refusal to consider new evidence is the majority rule that claims that arise post-filing generally are not claim precluded. *Sosebee* did not consider that aspect of Nevada's claim preclusion law, nor did it need to given the factual context of that case.[3]

If, post-filing, the insurer's obligation to pay becomes clear and the insurer still does not pay, then a separate bad faith claim may arise. *See Pulley v. Preferred Risk Mut. Ins. Co.*, 897 P.2d 1101, 1102-03 (Nev. 1995) (bad faith claim based on post-filing refusal to pay arbitrator's award was not claim precluded by prior breach of contract action); *Guar. Nat. Ins. Co. v. Potter*,

---

[3] *Sosebee* also did not consider that, as a practical matter, amendments and supplements sought very late in the proceedings are likely to be denied.

1  912 P.2d 267, 272 (Nev. 1996) ("Bad faith is established where the insurer acts unreasonably and
2  with knowledge that there is no reasonable basis for its conduct."); ECF No. 81-7 at 3 (Esurance's
3  Rule 30(b)(6) designee testifying that Esurance owed a duty to Searcy throughout the litigation of
4  *Searcy I*). Esurance argues that if facts arising after the complaint could form the basis of a
5  second bad faith lawsuit, then virtually all insurance breach of contract claims will give rise to a
6  second lawsuit for bad faith. But that assumes that insurers in breach of contract actions will
7  engage in conduct that could support a bad faith claim. And as in any bad faith action, the insurer
8  may take the position (like Esurance has done in this case) that it acted reasonably throughout the
9  prior litigation.[4]

In sum, Searcy's extra-contractual claims are barred by claim preclusion to the extent they are (1) based on Esurance's conduct prior to September 16, 2013, the date Searcy filed her first lawsuit or (2) are a continuation of those same claims unsupported by new, post-filing acts. However, Searcy's extra-contractual claims are not precluded for Esurance's conduct post-dating September 16, 2013 relating to: (1) the refusal to pay after receiving the economist's report; (2) the failure to timely pay the arbitration award; and (3) counsel's tactics during the litigation of *Searcy I*.[5] I therefore grant in part and deny in part Esurance's motion for summary judgment based on claim preclusion.

**B. Punitive Damages**

Esurance contends that there is no clear and convincing evidence to support punitive damages in this case because Esurance relied on the advice of its counsel that Searcy was not entitled to the policy limit. Searcy responds that Esurance ignored its counsel's advice to reconsider payment if presented with new information. Searcy also argues the attorney's advice was irrelevant because Esurance had already decided not to pay the policy limit and to force Searcy to trial.

---

[4] *See Carstarphen*, 594 F. Supp. 2d at 1211 (rebutting the fear of successive litigation).

[5] Whether Esurance's counsel's litigation tactics can support a bad faith claim is a separate question I address below.

Shortly after *Searcy I* was filed, Esurance obtained an analysis of Searcy's claim from attorney Bryce Buckwalter. ECF No. 75-10. Buckwalter opined that Searcy's injuries had a total remaining value of $11,000 to $21,000. *Id.* at 6. Buckwalter noted that this evaluation did not account for future medical care. *Id.*

Esurance has presented evidence that it obtained an attorney's opinion that Searcy was not entitled to the policy limits. However, Esurance had already decided on its own not to pay the policy limits because it had denied Searcy's claim, leading her to file *Searcy I*. Additionally, the fact that Buckwalter opined early in the case that Searcy was not entitled to the policy limits does not take into account any of the post-filing events, which are all that remain of Searcy's extra-contractual claims. Esurance has not shown it relied on Buckwalter's advice (1) to conclude that Searcy was not entitled to the policy limits after reviewing the economist's report or (2) for the delay in payment of the arbitration award. Esurance thus has not met its initial burden of showing no issue of fact remains as to punitive damages for the remaining portions of Searcy's extra-contractual claims. I deny this portion of Esurance's motion.

**C. Attorney's Fees in *Searcy I***

Esurance argues that Searcy cannot recover attorney's fees expended while litigating *Searcy I* because she executed a stipulation to dismiss the case with each party to bear its own costs and attorney's fees. Searcy responds that Nevada's arbitration rules limit the attorney's fees and costs she could recover. She also argues that the stipulation must be read in context because she never asserted claims for attorney's fees or costs in *Searcy I*.

The parties in *Searcy I* executed a stipulation for dismissal with prejudice in which they agreed that Searcy's claims against Esurance in that case were dismissed with prejudice with "each party to bear their (sic) own costs and attorney's fees." ECF No. 76-4. Searcy admits she chose not to pursue attorney's fees and costs in *Searcy I* even though she could have obtained a partial award. ECF No. 81 at 8. Her agreement to dismiss the case with each party to bear its own costs and attorney's fees therefore bars her from seeking in this case the attorney's fees and costs incurred in *Searcy I*. I grant this portion of Esurance's motion.

### D. Esurance's Counsel's Conduct

Esurance argues that Searcy cannot base a bad faith claim on its counsel's litigation decisions, such as hiring an expert, failing to conduct discovery, asking Searcy embarrassing questions at her deposition, or "forcing" her to appear at the arbitration. Esurance asserts that its counsel's conduct is protected by the litigation privilege. Searcy responds that while the litigation privilege may protect Esurance's counsel, it does not absolve Esurance of its obligation to act in good faith.

Under Nevada law, "communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications immune from civil liability." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014) (en banc) (quotation omitted). The privilege also applies to "conduct occurring during the litigation process." *Bullivant Houser Bailey PC v. Eighth Judicial Dist. Court of State ex rel. Cnty. of Clark*, 381 P.3d 597 (Nev. 2012) (unpublished) (emphasis omitted). It is an absolute privilege that "bars any civil litigation based on the underlying communication." *Hampe v. Foote*, 47 P.3d 438, 440 (Nev. 2002), *abrogated by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008).

The policy behind the privilege is to grant attorneys "the utmost freedom in their efforts to obtain justice for their clients." *Greenberg Traurig*, 331 P.3d at 903 (quotation omitted). Indeed, the privilege is "primarily for the client's benefit." *Id.* at 904. The privilege's scope is "quite broad." *Fink v. Oshins*, 49 P.3d 640, 644 (Nev. 2002). Whether the privilege applies is a question for the court. *Id.* at 643-44.

Esurance identifies as the privileged conduct: (1) that Buckwalter asked improper questions during Searcy's deposition that embarrassed her; (2) that Buckwalter relied on his own expert economist's opinions instead of Searcy's expert; (3) that Buckwalter did not investigate or conduct discovery that Searcy thinks should have been done, and (4) that Buckwalter "forced" Searcy to appear at her deposition and at the arbitration hearing. These communications and actions taken during the litigation are protected by the absolute litigation privilege for both

Buckwalter and his client, Esurance. The privilege is primarily for the client's benefit to ensure zealous representation by its attorney. It would be a hollow privilege if it did not extend to the client because the attorney would feel constrained not to expose his client to potential liability based on his litigation conduct. Thus, Buckwalter's communications and actions taken during *Searcy I* cannot form the basis of Searcy's bad faith claim. I therefore grant Esurance's motion for summary judgment on Searcy's bad faith claim to the extent that claim is based on Buckwalter's litigation communications and conduct done on Esurance's behalf.

However, that does not excuse Esurance of its duty to adjust Searcy's claim in good faith throughout the time *Searcy I* was pending. For example, if Esurance received new information during the pendency of *Searcy I* that made clear its obligation to pay, its decision not to do so is not absolutely privileged. Nor does the privilege necessarily mean that evidence of what Esurance did in the litigation (through Buckwalter) is inadmissible at trial. *See White v. W. Title Ins. Co.*, 710 P.2d 309, 318 (Cal. 1985) (holding litigation privilege bars a claim based on litigation communications but those communications can be used as evidence to prove bad faith claim based on other allegations); ECF No. 83 at 6 (stating Esurance is "not argu[ing] that an insurer's general actions taken during litigation are subject to absolute protection"). The admissibility of evidence in support of Searcy's remaining bad faith claims is best resolved at a later stage through a motion in limine.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that defendant Esurance Insurance Company's motion for summary judgment **(ECF No. 74) is GRANTED in part and DENIED in part** as more fully set forth in this order.

DATED this 17th day of March, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE